**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-_____

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**

    Plaintiff,

v.

**GOLLNICK CONSTRUCTION, INC. d/b/a COLORADO EXCAVATING,**

    Defendant.

**COMPLAINT**

**NATURE OF THE ACTION**

This is a public enforcement action under Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), and Title I of the Civil Rights Act of 1991 against Defendant Gollnick Construction, Inc. d/b/a Colorado Excavating ("Defendant") to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Dora Marquez, an individual with a disability as defined by the ADA. As alleged with greater particularity below, the Equal Employment Opportunity Commission ("EEOC" or "Commission") alleges Defendant changed the terms and conditions of Marquez's employment because of her disability, failed to accommodate Marquez, and terminated Marquez's employment because of her disability and/or the need to accommodate her disability. The EEOC further alleges that Defendant engaged in recordkeeping and confidentiality violations in violation of the ADA and Commission regulations.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado.

## PARTIES

3. The EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant, a South Dakota corporation, has continuously been doing business in the State of Colorado.

5. At all relevant times, Defendant has continuously had at least 15 employees.

6. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5) and (7).

7. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

8. Defendant's principal office is in Wheatridge, Colorado.

9. Defendant represents itself to the public as an excavating company that handles "a full range of excavating and earthmoving services."

10. Defendant's services include: foundation and basement excavation; property grading; drainage systems installation; backfilling; sewer, septic, and water trenching; and driveway and road development.

11. Defendant is owned by Cory Gollnick, who is also the company's president.

## ADMINISTRATIVE PROCEDURES

12. More than 30 days prior to the institution of this lawsuit, Dora Marquez filed a charge of discrimination with the EEOC alleging violations of the ADA by Defendant.

13. The EEOC provided Defendant with notice of the charge of discrimination.

14. The EEOC investigated the charge of discrimination.

15. Based on the evidence obtained during the investigation, the EEOC issued a determination finding reasonable cause to believe that Defendant engaged in certain unlawful employment practices identified in the determination.

16. The EEOC's determination included an invitation for Defendant to join the EEOC in informal methods of conciliation in an attempt to eliminate the alleged unlawful employment practices.

17. The EEOC and Defendant were unable to reach an agreement through the conciliation process.

18. On July 11, 2019, the EEOC sent notice to Defendant that conciliation efforts had failed.

19. All conditions precedent to the institution of this lawsuit have been fulfilled.

## **GENERAL ALLEGATIONS**

**Marquez's Disability**

20. Dora Marquez is a qualified individual with a disability as defined under the ADA.

21. Marquez has a seizure disorder.

22. Marquez takes medication for her seizure disorder.

23. Marquez's seizure disorder substantially limits her neurological functions.

24. Marquez is able to sense when she is about to have a seizure and has time to take medication to mitigate its effects.

25. At all relevant times, Marquez has held a valid Colorado driver's license.

**Marquez's Employment with Defendant**

26. On or about December 11, 2017, Defendant hired Marquez as an Office Assistant.

27. There was no job description for the Office Assistant position.

28. There was not a past incumbent in the Office Assistant position.

29. Marquez's primary job duties as Office Assistant consisted of clerical functions relating to Department of Transportation (DOT) paperwork.

30. While Marquez would sometimes deliver parts or other materials to jobsites or pick up and deliver permits, the Office Assistant position was not established for those functions.

31. The Office Assistant position existed to perform clerical functions.

32. Marquez was not hired by Defendant for her expertise in driving company vehicles.

33. Other employees of Defendant performed parts-running and delivery driving functions.

34. These functions were not highly specialized.

35. Marquez was given assignments by Katey Lewis, Defendant's Project Manager.

36. Marquez was also given assignments from Shanna Smotherman, Defendant's Office Manager.

37. Smotherman was a manager and Defendant's agent.

38. Marquez most often took direction from Smotherman.

39. Smotherman trained Marquez.

40. Smotherman served as Marquez's defacto supervisor.

41. Marquez and Smotherman worked in close physical proximity in the office.

42. At times, Marquez was also given assignments by Gollnick.

43. In or around late January or early February 2018, Marquez disclosed her disability to Smotherman.

44. Marquez made this disclosure during a conversation in which Smotherman stated that her nephew had medical issues, including seizures.

45. In the conversation with Smotherman, Marquez disclosed that she takes medication for her seizure disorder.

46. Marquez requested as an accommodation for her disability that if she had a seizure at work, the company not call 911.

47. Smotherman went on vacation shortly after this conversation.

48. In or around early February 2018, Marquez had another conversation with Smotherman when they discussed Marquez's disability.

49. This second conversation occurred shortly after Smotherman returned from vacation.

50. In the second conversation with Smotherman, Marquez mentioned again that it was not necessary to call an ambulance if she ever had a seizure at work.

51. In the second conversation, Smotherman stated that she knew how to deal with seizures because her nephew had them.

52. After Marquez disclosed her disability to Smotherman and requested accommodation, Marquez's hours were reduced, resulting in a reduction of her income.

53. On or around March 16, 2018, Marquez suffered a seizure at work.

54. Before the seizure, Marquez was in the office with Smotherman.

55. Marquez informed Smotherman that a seizure was imminent.

56. Marquez took her medication.

57. Marquez asked Smotherman to call her daughter, explaining that there was no need to call 911.

58. Marquez then suffered a seizure.

59. After the seizure was over, Smotherman drove Marquez to the hospital.

60. Marquez was released from the hospital the same day with no restrictions.

61. Marquez informed Defendant that she would take the rest of the day off, but she would return to work the next day she was scheduled to work.

62. Defendant decided to discharge Marquez after learning about her seizure on March 16, 2018.

63. Defendant decided to discharge Marquez because she had a seizure at work on or around March 16, 2018.

64. Defendant decided to discharge Marquez because of her disability, a seizure disorder.

65. On or around March 20, 2018, Marquez arrived for her next regularly scheduled shift.

66. Upon arriving at work on March 20, 2018, Marquez was given a termination letter signed by Lewis.

67. The termination letter stated that Marquez's "pre-existing medical condition causing seizures should have been disclosed to Colorado Excavating when [she was] hired as an office assistant and requested to drive a company vehicle to pick up parts, permits and delivery tools to various job sites."

68. The letter also stated: "Given that you did not disclose your medical condition prior to employment and no other positions are available to accommodate your inability to safely operate a company vehicle, Colorado Excavating is forced to terminate your employment."

69. After receiving the letter, Marquez pleaded with Lewis to keep her job.

70. Lewis responded that she did not want Marquez having seizures on her floor.

71. At the time of her termination, Defendant had notice Marquez had a seizure disorder.

72. At the time of her termination, Defendant knew Marquez had a seizure disorder.

73. At the time of her termination, Marquez was qualified to perform the essential functions of the job of Office Assistant, with or without reasonable accommodation.

74. At no time did Defendant initiate or engage with Marquez in any interactive process to identify any precise limitations resulting from her disability.

75. At no time did Defendant initiate or engage with Marquez in any interactive process to identify any potential accommodations for any limitations.

76. At no time did Defendant conduct an individualized assessment of Marquez's capabilities and limitations and the responsibilities of her particular job.

77. At no time did Defendant consult with a medical professional before terminating Marquez.

78. After Marquez's termination, other employees of Defendant performed parts-running and delivery driving functions.

79. A "fueler" also provided these functions on an as-need basis.

80. After Marquez's termination, there has been no incumbent in the Office Assistant position.

81. Since at least 2018, Defendant has engaged in unlawful employment practices in violation of Section 102 of Title I of the ADA, 42 U.S.C. § 12112.

**Defendant's Recordkeeping and Confidentiality Violations**

82. Since at least 2018, Defendant has comingled DOT medical files of its employees with personnel files.

83. Since at least 2018, Defendant has shredded applications of applicants who are not hired by Defendant.

84. Since at least 2018, Defendant has failed, in violation of Section 102(d)(3) of the ADA, 42 U.S.C. § 12112(d)(3), to keep medical information in separate medical files.

85. Since at least 2018, Defendant has failed, in violation of Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 709(c) of Title VII, 42 U.S.C. § 2000e-8(c), to make and preserve records relevant to the determination of whether unlawful employment practices have been or are being committed.

## **FIRST CLAIM FOR RELIEF**

**Disparate Treatment Based on Disability and/or the Need to Provide Accommodation
(42 U.S.C. §§ 12112(a) and (b)(5)(B))**

86. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

87. At all relevant times, Marquez was an individual with a disability under 42 U.S.C. § 12102.

88. At all relevant times, Marquez was qualified and able to perform the essential functions of the Office Assistant position, with or without reasonable accommodation.

89. Defendant denied Marquez employment opportunities because of her disability and/or because of the need to provide reasonable accommodation for her disability in violation of Sections 102(a) and 102(b)(5)(B) of the ADA, 42 U.S.C. §§ 12112(a) and (b)(5)(B).

90. Defendant took adverse action against Marquez by reducing her hours because of her disability and/or because of the need to provide reasonable accommodation for her disability.

91. Defendant took adverse action against Marquez by discharging her because of her disability and/or because of the need to provide reasonable accommodation for her disability.

92. The effect of the practices complained of in the foregoing paragraphs has been to deprive Marquez of equal employment opportunities because of her disability.

93. The effect of the practices complained of in the paragraphs above has been to inflict emotional pain, suffering, and inconvenience upon Marquez and to deprive her of the financial and other benefits of working for Defendant.

94. The unlawful employment practices complained of in the forgoing paragraphs were intentional.

95. The unlawful employment practices complained of in the forgoing paragraphs were done with malice or reckless indifference to Marquez's federally protected rights.

## SECOND CLAIM FOR RELIEF

### Denial of Reasonable Accommodation
### (42 U.S.C. § 12112(8)-(10))

96. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

97. At all relevant times, Marquez was an individual with a disability under 42 U.S.C. § 12102.

98. At all relevant times, Marquez was qualified and able to perform the essential functions of the Office Assistant position, with or without reasonable accommodation.

99. Defendant had an obligation to engage in the interactive process to determine whether one or more reasonable accommodations were available to Marquez.

100. Reasonable accommodations were available, if needed, which would have enabled Marquez to perform the essential functions of her job.

101. Defendant failed to perform an individualized assessment as to whether Marquez was capable of performing the essential functions of the Office Assistant position, with or without reasonable accommodation.

102. At no time did Defendant engage in the interactive process with Marquez.

103. At no time did Defendant provide Marquez with reasonable accommodations.

104. By refusing to provide Marquez reasonable accommodations, Defendant violated Sections 102(a) and 102(b)(5)(A) of Title I of the ADA, 42 U.S.C. §§ 12112(a) and 12112(b)(5)(A).

105. The effect of the practices complained of in the foregoing paragraphs has been to deprive Marquez of equal employment opportunities because of her disability.

106. The effect of the practices complained of in the paragraphs above has been to inflict emotional pain, suffering, and inconvenience upon Marquez and to deprive her of the financial and other benefits of working for Defendant.

107. The unlawful employment practices complained of in the forgoing paragraphs were intentional.

108. The unlawful employment practices complained of in the forgoing paragraphs were done with malice or reckless indifference to Marquez's federally protected rights.

## **THIRD CLAIM FOR RELIEF**

**Recordkeeping and Confidentiality Violations**
**(42 U.S.C. § 12112(d)(3); 42 U.S.C. 12117; 29 C.F.R. § 1630.14; 29 C.F.R. § 1602.14)**

109. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

110. Since at least 2018, Defendant has not kept medical information in separate medical files, as required by the ADA and applicable regulations.

111. Since at least 2018, Defendant has not preserved application forms submitted by applicants and other records having to do with hiring, in violation of applicable regulations.

112. The unlawful employment practices complained of in the forgoing paragraphs were done with malice or reckless indifference to Marquez's and others' federally protected rights.

113. On information and belief, the unlawful employment practices complained of in the foregoing paragraphs are continuous and ongoing.

**PRAYER FOR RELIEF**

Wherefore, the EEOC respectfully requests that this Court:

A.  Order Defendant to make and preserve all records relevant to the determination of whether unlawful employment practices have been or are being committed, in accordance with Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 709(c) of Title VII, 42 U.S.C. § 2000e-8(c).

B.  Order Defendant to keep medical information in separate medical files in accordance with Section 102(d)(3) of the ADA, 42 U.S.C. § 12112(d)(3).

C.  Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, successors, assigns and all persons in active concert or participation with Defendant, from engaging in any employment practice which discriminates on the basis of disability, and from retaliating against employees who oppose such unlawful employment practices.

D.  Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

E.  Order Defendant to make whole Marquez, by providing appropriate backpay and lost benefits with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to the reinstatement of Marquez, or front pay in lieu thereof.

F.  Order Defendant to make whole Marquez by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to relocation expenses, job search expenses, and medical expenses, in amounts to be determined at trial.

    G.    Order Defendant to make whole Marquez by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of credit standing, and stress, in amounts to be determined at trial.

    H.    Order Defendant to pay Marquez punitive damages for its malicious or reckless conduct described in the paragraphs above, in amounts to be determined at trial.

    I.    Grant such further relief as this Court deems necessary and proper in the public interest.

    J.    Award the EEOC its costs of this action.

RESPECTFULLY SUBMITTED this 11th day of September, 2019.

Sharon Fast Gustafson
General Counsel

Gwendolyn Reams
Associate General Counsel

Mary Jo O'Neill
Regional Attorney
Phoenix District Office

Rita Byrnes Kittle
Supervisory Trial Attorney

*/s/ Laurie Jaeckel*
Lauren Jaeckel
Trial Attorney
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Denver Field Office
303 E. 17th Avenue, Suite 410
Denver, CO 80203
Phone: (303)-866-1381
Email: lauren.jaeckel@eeoc.gov

**PLEASE NOTE**: For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorneys. Duplicate service is not required on the General Counsel and Associate General Counsel in Washington, D.C.